**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**MORGAN & MORGAN, P.A.**
Carlos V. Leach*
Andrew R. Frisch
6824 Griffin Road
Davie, Florida 33314
Telephone:  (954) 318-0268
*Admitted pro hac vice

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAMEL TOURE and ANDREA BURCH, individually and on behalf all others similarly situated,<br><br>                 Plaintiffs,<br><br>    v.<br><br>AMERIGROUP CORP. and AMERIGROUP NEW YORK, LLC d/b/a Amerigroup Community Care,<br><br>                 Defendants. | 10 Civ. 5391 (RLM) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

PROCEDURAL BACKGROUND.............................................................................. 1

I.      The Parties .................................................................................................... 1

II.     Litigation....................................................................................................... 2

III.    Settlement Negotiations ................................................................................ 2

IV.     Discovery ...................................................................................................... 3

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION.............. 3

I.      The Settlement Fund ..................................................................................... 3

II.     Release .......................................................................................................... 4

III.    Eligible Employees ....................................................................................... 4

IV.     Allocation Formula ....................................................................................... 4

V.      Attorneys' Fees, Litigation Costs and Service Awards ................................. 5

VI.     Settlement Claims Administrator................................................................... 5

ARGUMENT ............................................................................................................ 5

I.      The Settlement Class Meets the Legal Standard for Class Certification. ...... 5

        A.      Numerosity......................................................................................... 7

        B.      Commonality....................................................................................... 7

        C.      Typicality ........................................................................................... 8

        D.      Adequacy of the Named Plaintiffs ..................................................... 9

        E.      Certification Is Proper Under Rule 23(b)(3)....................................... 9

                1.      Common Questions Predominate. ........................................... 10

                2.      A Class Action Is a Superior Mechanism. ............................... 11

II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be  Approved. 12

        A.      The Proposed Settlement Is Procedurally Fair.......................................................... 12

        B.      The Proposed Settlement Is Substantively Fair. ..................................................... 14

                1.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (*Grinnell* Factor 1). ..................................................................... 14

                2.      The Reaction of the Class Has Been Positive (*Grinnell* Factor 2). .......... 15

                3.      Discovery Has Advanced Far Enough to Allow the Parties to
                        Responsibly Resolve the Case (*Grinnell* Factor 3)................................... 16

                4.      Plaintiffs Would Face Real Risks if the Case Proceeded
                        (*Grinnell* Factors 4 and 5)......................................................... 17

                5.      Establishing a Class and Maintaining It Through Trial Would Not
                        Be Simple (*Grinnell* Factor 6). ................................................ 18

                6.      Defendants' Ability to Withstand a Greater Judgment Is Unclear
                        (*Grinnell* Factor 7). ................................................................... 18

                7.      The Settlement Fund Is Substantial in Light of the Possible Recovery
                        and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9). ........... 19

III.    Approval of the FLSA Settlement Is Appropriate Under Federal Law............................ 20

CONCLUSION................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)......................................................................................9, 10

*Ansoumana v. Gristede's Operating Corp.,*
201 F.R.D. 81 (S.D.N.Y. 2001) ...............................................................20

*Aponte v. Comprehensive Health Mgmt., Inc.,*
No. 10 Civ. 4825, 2011 WL 2207586 (S.D.N.Y. June 2, 2011)...........................7, 8

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......................................................14, 16, 17

*Cagan v. Anchor Sav. Bank FSB,*
No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)...............................19

*Christopher v. SmithKline Beecham Corp.,*
132 S. Ct. 2156 (2012)...............................................................................17

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)...............................................................12, 14, 19

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)...........................................................................7

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001)...................................................................12, 13

*deMunecas v. Bold Food, LLC,*
No. 09 Civ. 00440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................21

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006)...........................................................................6

*Diaz v. E. Locating Serv. Inc.,*
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2012) ........................21

*Dziennik v. Sealift, Inc.,*
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)...........................9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................13

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005)................................................................ passim

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)...........................................................................................7

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...............................20

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)................................................................................11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................11

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969)........................................................................17

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) ...........................................................................7

*Khait v. Whirlpool Corp.*,
No. No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20 2010)................................11, 12

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ......................................................................20, 21

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................15

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..................................................................................8

*McBean v. City of N.Y.*,
228 F.R.D. 487 (S.D.N.Y. 2005) .........................................................................10

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984) ............................................................................20

*Morris v. Affinity Health Plan, Inc.*,
No. 09 Civ. 1932, 2012 WL 1608644 (S.D.N.Y. May 8, 2012)................................12, 13, 16

*In re Novartis Wage & Hour Litigation*,
611 F.3d 141 (2d Cir. 2010)...............................................................................17

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ..............................................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................17

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)................................16

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................................6

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94 Civ 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003)........................15

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)......................................................................................8

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986)....................................................................................10

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..............13, 14, 20

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)............................12

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................13

*Toure v. Cent. Parking Sys. of N.Y.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)...........................9

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)...........................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001)..............................................................................10, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................12, 13

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)....................................................................................16

*Willix v. Healthfirst, Inc.*,
No. 07 Civ. 1143, 2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009) ................... passim

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008)....................................................................15

STATUTES

29 U.S.C. § 203(k) ....................................................................................................7

**OTHER AUTHORITIES**

29 C.F.R. § 541.501 ..........................................................................................7

29 C.F.R. § 541.502 ..........................................................................................7

29 C.F.R. § 778.114(a).....................................................................................19

Fed. R. Civ. P. 23 ..................................................................................... passim

## INTRODUCTION

The parties' $4,450,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiffs respectfully request an order: (1) granting final certification of the settlement class; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Decl. of Rachel Bien in Supp. of Pls.' Mot. for Final Approval ("Bien Decl.");[1] and (3) approving the FLSA Settlement.

On April 20, 2012, the Court took the first step in the settlement approval process by granting preliminary approval of the settlement and directing that notice be mailed to class members. ECF No. 92. The members of the class have been notified of the terms of the settlement and their right to opt out of or object to it. As of July 23, 2012, no class members have objected to the settlement or excluded themselves.[2] Bien Decl. Ex. C (Donaldson Decl.) ¶¶ 8-9. With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

## PROCEDURAL BACKGROUND

### I. The Parties

Plaintiffs and the class members are approximately 943 current and former Medicaid Marketing Representatives ("Marketing Representatives") who work or worked for Amerigroup Corporation and Amerigroup New York, LLC (collectively, "Amerigroup" or "Defendants") in New York. Plaintiffs' job duties involved signing up eligible New Yorkers for free or low cost government-subsidized health insurance at locations throughout New York, including at doctors'

---

[1]     Unless otherwise indicated, all exhibits are attached to the Bien Decl.

[2]     As discussed below, one individual submitted an opt-out request that was not technically valid. Bien Decl. ¶ 16. Although he was given the chance to revise it, the class member has told Class Counsel that he does not wish to opt-out. *Id.*

offices, hospitals, and pharmacies.  Ex. B (Am. Compl.) ¶ 2.  Plaintiffs alleged that Amerigroup

violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by

misclassifying them as exempt "outside salespeople" and failing to pay them overtime when they

worked more than 40 hours in a workweek.  *Id*. ¶¶ 4-6.   Plaintiffs sought recovery of overtime

wages, attorneys' fees and costs, interest, and liquidated damages.  *Id*.

## II.    Litigation

On November 22, 2010, Plaintiff Hamel Toure filed a class and collective lawsuit on

behalf of Amerigroup Marketing Representatives who worked in New York.  Bien Decl. ¶ 4.  On

April 18, 2011, Andrea Burch filed a class and collective lawsuit, making the same claims as the

*Toure* complaint.  *Id*. ¶ 5.  On May 25, 2011, the cases were consolidated as *Toure v.*

*Amerigroup Corp.*, No. 10 Civ. 5391.  *Id.* ¶ 6; Ex. B (Am. Compl.).

On June 2, 2011, Defendants renewed their a Motion to Transfer Venue to the Eastern

District of Virginia ("Transfer Motion"), in response to the consolidated complaint, which

Plaintiffs opposed on June 9, 2011.  *Id.* ¶ 7.

## III.    Settlement Negotiations

On August 22, 2011, the parties entered into a stipulation under which they agreed to

conditionally certify the FLSA collective, send a negotiated Court-approved notice to FLSA

collective members, engage in targeted discovery, and mediate in an effort to settle the claims on

a class-wide basis.  Bien Decl. ¶ 8.  The Court approved the parties' stipulation on August 24,

2011 and authorized the notice to collective members to be mailed.  *Id*. ¶ 9.  A total of 114

current and former Marketing Representatives have opted in to the case.  *Id*.

On February 1, 2012, the parties attended a full-day mediation session with an

experienced employment law mediator, Linda Singer of JAMS.  *Id*. ¶ 11.  They were unable to

resolve the case during the mediation, but continued negotiating with the mediator's assistance for the next several days. *Id*. On February 14, 2012, the parties signed a Memorandum of Understanding that set forth the material terms of the settlement, including the monetary amount. *Id*. ¶ 12. The parties then drafted a detailed settlement agreement, which incorporated all terms and which all parties have signed. *Id*.; Ex. A (Settlement Agreement).

## IV. Discovery

The parties engaged in significant discovery before agreeing to resolve this case. Defendants deposed the named Plaintiffs and six opt-in Plaintiffs. Bien Decl. ¶ 10. Plaintiffs deposed two Rule 30(b)(6) witnesses, who testified about the job duties of Marketing Representatives, Defendants' compensation policies and practices, and Defendants' decision to classify Marketing Representatives as exempt. *Id*. Plaintiffs also responded to interrogatories and document requests for the two named Plaintiffs and nine opt-in Plaintiffs. *Id*. Defendants produced documents in response to Plaintiffs' document requests, including corporate policies, training materials, work schedules, payroll records, personnel files, production reports, emails, and memoranda. *Id*. In addition, Plaintiffs interviewed approximately 50 opt-in Plaintiffs regarding their duties and hours worked. *Id*.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

## I. The Settlement Fund

Amerigroup has agreed to create a Settlement Fund of four million four hundred and fifty thousand dollars ($4,450,000) ("the Fund"). Bien Decl. Ex. A (Settlement Agreement) ¶ 3.1(A). Amerigroup deposited twenty (20%) percent ($890,000) of the Fund into an escrow account following the Court's grant of preliminary approval of the settlement, and will deposit the other eighty (80%) percent of the Fund 10 days after the Court grants final approval of the settlement.

*Id.* ¶ 3.1(B).  Any interest that accrues on these amounts will be added to the Fund.  *Id.*  The Fund will cover awards to class members, Court-approved attorneys' fees and costs, Court-approved service payments, and the cost of administering the settlement.  *Id.* ¶ 3.1(A).  None of the Fund will revert to Amerigroup.  *Id.* ¶ 3.4(H).  In addition to the Fund, Amerigroup is responsible for paying the employer's share of employment taxes, including federal and state payroll taxes, the employer's share of the FICA tax, and any federal and state unemployment tax due on the portion of class members' settlement awards that is allocated to wages.  *Id.* ¶ 3.5(C).

## II.     Release

Class members who do not opt out of the settlement will release all NYLL claims that were brought in the litigation or that are based on the same facts and circumstances as the claims in the litigation.  Bien Decl. Ex. A (Settlement Agreement) ¶ 3.6.  Class members will release their FLSA claims by endorsing the release printed on their settlement checks.  *Id.*

## III.    Eligible Employees

The class consists of all current and former Marketing Representatives who worked for Defendants in New York at any time between November 22, 2004 through April 20, 2012 for at least four (4) workweeks.  *Id.* ¶ 1.15.

## IV.     Allocation Formula

Class members who do not opt out will be paid pursuant to an allocation formula based on their dates of employment during the applicable limitations periods and whether they previously joined the FLSA collective.  *Id.* ¶ 3.4(C).  Class members who joined the FLSA collective will receive an additional amount in recognition of the risk they incurred by joining the lawsuit and the fact that they affirmatively sought to protect their FLSA rights, including the right to obtain 100% liquidated damages on top of their unpaid wages.  *See id.*  No class member

will receive an award that is less than $100 before taxes are deducted. *Id*. ¶ 3.4(B). Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages. *Id*. ¶ 3.5(A).

## V. Attorneys' Fees, Litigation Costs and Service Awards

Class Counsel have filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

## VI. Settlement Claims Administrator

The parties have selected Settlement Services, Inc. to serve as the settlement claims administrator. The claims administrator's fees will be paid out of the Fund. *Id*. ¶ 2.1. On May 4, 2012, SSI mailed the court-authorized Notice to 943 class members. Ex. C (Donaldson Decl.) ¶ 4. SSI sent notices to an additional 8 class members on June 4, 2012. *Id*. ¶ 5. SSI performed traces on mailings that were returned as undeliverable to locate updated addresses. *Id*. ¶¶ 6-7. The Notice informed class members, among other things, of their right to object to or exclude themselves from the settlement and explained how to do so. *Id*., Ex. A (Notice) ¶¶ 10-11. As of July 23, 2012, no class member has objected to the settlement. *Id*. ¶ 8. One class member, Shamser Khan, mailed in a letter purporting to exclude himself, but the letter did not constitute a valid exclusion request. *Id*. ¶ 9. SSI then called the class member and instructed him how to properly opt-out. *Id*. The class member did not send in a revised opt-out. *Id*. On July 23, 2012, Mr. Khan informed Class Counsel that he did not wish to opt-out. Bien Decl. ¶ 16.

## ARGUMENT

## I. The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *See Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On April 20, 2012, the Court preliminarily certified the settlement class. The Court

should now grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met. Plaintiffs respectfully request that the Court certify the following class for purposes of effectuating the settlement:

> All individuals who work or worked for Defendants in the Medicaid Marketing Representative I, II, III and Team Lead positions or in another similar job title whose primary job function was facilitated enrollment of members in Medicaid health plans in New York between November 22, 2004 through the date on which the Court grants Preliminary Approval of the settlement and who worked for Defendants for at least four (4) workweeks.[3]

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> [Q]uestions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

---

[3] The class is restricted to those employees who worked more than four weeks in order to account for an initial period of classroom training that all Medicaid Marketing Representatives received at the beginning of their employment.

### A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are approximately 943 class members. Bien Decl. Ex. C (Donalson Decl.) ¶ 5.

### B. Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves several common factual and legal issues, including: (1) whether Defendants misclassified Plaintiffs and the class as exempt outside salespeople; (2) whether Plaintiffs' primary duty was "sales" within the meaning of the outside salesperson exemption, *see* 29 U.S.C. § 203(k); 29 C.F.R. § 541.501; (3) whether the locations at which Plaintiffs performed their primary duties constitute "fixed site[s]" within the meaning of the outside salesperson exemption, *see* 29 C.F.R. § 541.502; and (4) whether Defendants had a policy of failing to pay Plaintiffs overtime for hours over forty. These issues – involving common operative facts stemming from corporate policies that affected class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *See Aponte v. Comprehensive Health*

*Mgmt., Inc.*, No. 10 Civ. 4825, 2011 WL 2207586, at *9 (S.D.N.Y. June 2, 2011) (commonality satisfied where common questions included "whether defendant has failed to compensate class members for work performed in excess of forty hours per workweek and whether defendant has a policy of misclassifying its Benefits Consultants as exempt from coverage of the overtime provisions of the NYLL"); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2009 WL 6490087, at *2 (E.D.N.Y. Dec. 3, 2009) (same).

## C.     Typicality

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of class members' claims, namely, that Plaintiffs and class members all worked as Marketing Representatives, were subject to the same policies that governed their pay and duties, were classified as exempt outside salespeople, and were not paid overtime for hours over forty. *See Aponte*, 2011 WL 2207586, at *10 (typicality satisfied where "[p]laintiffs . . ., similar to the proposed class members, worked as Benefits Consultants promoting defendant's health care plans and products, were subject to the same alleged misclassification as exempt employees, and were denied overtime wages for hours worked in

excess of forty hours per week"); *Willix*, 2009 WL 6490087, at *3 (typicality met where "all PHSP Marketing Representatives performed essentially the same duties, attended the same training, and were governed by the same governmental requirements").

**D.    Adequacy of the Named Plaintiffs**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted). There is no evidence that Plaintiffs' and class members' interests are at odds. Moreover, the Plaintiffs have shown their commitment to the class by responding to document requests and interrogatories and having their depositions taken. *See Willix*, 2009 WL 6490087, at *3.

**E.    Certification Is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 594 (1997). Satisfaction of

Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.     <u>Common Questions Predominate.</u>

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of N.Y.*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all class members worked as Marketing Representatives and were subjected to the same corporate policies and practices governing their duties and pay. They are also unified by a common legal theory – that Defendants' classification of them as exempt outside salespeople violated the law. These common issues predominate over any issues affecting only individual class members. *See Willix*, 2009 WL 6490087, at *4 ("The common issues that unite the Plaintiffs and the class – Defendants' policy of not paying overtime and the question of whether that policy was lawful – predominate and are subject to generalized proof because all PHSP Marketing Representatives shared essentially the same duties, received the same training, and were all subject to the same or similar employee manual, personnel and pay policies, and government-imposed restrictions . . . .") Plaintiffs therefore satisfy Rule 23(b)(3).

## 2.    A Class Action Is a Superior Mechanism.

Rule 23(b)(3)'s second part analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20 2010); *Willix*, 2009 WL 6490087, at *5. Here, Plaintiffs and class members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will achieve economies of scale for putative class members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior where individual claims would burden judiciary and be inefficient for plaintiffs); *see*

---

[4]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

*also Khait*, 2010 WL 2025106, at *3; *Willix*, 2009 WL 6490087, at *5.

## II.     The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved.

Rule 23(e) requires court approval for a class action settlement to insure that it is

procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2).  To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v.*

*Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts

determine whether the settlement's terms are fair, adequate, and reasonable according to the

factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on*

*other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy

in favor of settlement[]" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal

quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL

1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the

case of class actions").  When, as here, "a settlement is negotiated prior to class certification, . . .

it is subject to a higher degree of scrutiny in assessing its fairness."  *D'Amato*, 236 F.3d at 85;

*Spann*, 2005 WL 1330937, at *5.  Even under high scrutiny, procedural and substantive

considerations support approving the proposed settlement.

### A.     The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through arm's-length

negotiations and after experienced counsel had evaluated the merits of the claims and defenses.

*See Morris v. Affinity Health Plan, Inc.*, No. 09 Civ. 1932, 2012 WL 1608644, at *5 (S.D.N.Y.

May 8, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a

product of collusion" where plaintiffs had conducted a thorough investigation and engaged in extensive, arm's-length negotiations involving counsel and the services of an experienced class action mediator); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *6 (S.D.N.Y. Apr. 16, 2012) (same). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties. The parties engaged in substantial discovery before agreeing to settle the lawsuit, including depositions of the named Plaintiffs and six opt-in Plaintiffs and two Rule 30(b)(6) corporate witnesses. Bien Decl. ¶ 10. Plaintiffs also interviewed approximately 50 opt-in Plaintiffs regarding their duties and hours worked. *Id*. In addition, the negotiations between the parties were contentious and assisted by an experienced employment law mediator, Linda Singer of JAMS. *Id*. ¶ 11. The negotiations were conducted at all times on an arm's-length basis. *Id*. ¶ 13. These circumstances raise a presumption that the settlement meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Morris*, 2012 WL 1608644, at *5.

**B.** **The Proposed Settlement Is Substantively Fair.**

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval.

**1.** **Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. "Litigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action." *Sewell*, 2012 WL 1320124, at *7. This case is no exception, with more than 900 class members with fact-intensive claims under both federal and state law.

Although there has been significant discovery in this case, additional discovery would be required to establish liability and damages, including more depositions of class members,

Defendants, and Defendants' employees and managers. A fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

## 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003).

Here, the Notice included a detailed explanation of the allocation formula and an estimate of each class member's award. Ex. C (Donaldson Decl.), Ex. A (Notice) ¶ 5. The Notice also informed class members of their right to object to or exclude themselves from the settlement and explained how to do so. *Id*. ¶¶ 10-11. As of July 23, 2012, no class member has objected to the settlement or requested exclusion. *Id*. (Donaldson Decl.) ¶¶ 8-9; Bien Decl. ¶ 16. This favorable response demonstrates that the class approves of the settlement and supports final approval. *See Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.")

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The parties' discovery here meets this standard. As discussed above, they took several depositions, conducted class member interviews, and engaged in extensive document discovery. Bien Decl. ¶ 10. In addition, the parties engaged in a day-long mediation during which they engaged in a vigorous exchange regarding their respective claims and defenses. *Id.* ¶ 11.

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early stages of discovery" where the parties had exchanged extensive information and where counsels' negotiations, while "cooperative," had "been in no way collusive"); *see also Morris*, 2012 WL 1608644, at *6 (approving settlement where plaintiffs had obtained discovery through an informal exchange of information and engaged in mediation); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *5 (S.D.N.Y. Jan. 6, 2010) (same). This factor also weighs in favor of final approval.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs' case is strong, it is not without risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (quoting *Marisol A. v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)) (internal quotation marks omitted).

While Plaintiffs believe they could distinguish the Supreme Court's recent decision in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), which abrogated the Second Circuit's decision in *In re Novartis Wage & Hour Litigation*, 611 F.3d 141 (2d Cir. 2010), and held that the outside sales exemption applied to pharmaceutical sales representatives who were prohibited by law from selling pharmaceuticals, the case undoubtedly increased the risk that Plaintiffs would have faced opposing Defendants' outside sales exemption defense.

If Plaintiffs survived a motion for summary judgment and the case proceeded to trial, such a trial would involve significant risk as to both liability and damages. Although Defendants would bear the burden of proving that Plaintiffs are exempt, such a determination would require the parties to put on substantial evidence regarding the duties of Plaintiffs and class members and the corporate policies that applied to them. If the Court determined that Plaintiffs were not exempt, Plaintiffs would still be required to prove the amount and extent of overtime that they worked largely through their testimony alone because Defendants did not keep accurate records

of their hours.

While Plaintiffs believe that they could ultimately defeat Defendants' defenses and establish liability, this would require significant factual development and favorable outcomes at trial and on appeal, all of which is inherently uncertain and lengthy. The settlement alleviates this uncertainty. This factor weighs in favor of final approval.

**5.      Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining it through trial is also present. Although Defendants stipulated to conditional certification of the FLSA collective, they would likely have moved to decertify the collective after discovery, requiring briefing by the parties. Furthermore, the Court has not yet certified the class under Rule 23, and such a determination would likely be reached only after another round of extensive briefing. Defendants may argue, both on a decertification motion and in opposing Rule 23 certification, that individual questions preclude certification, including whether the relevant policies were uniform throughout the class period and whether class members' duties and the locations where they worked varied. If the Court certified the class, Defendants would likely seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

**6.      Defendants' Ability to Withstand a Greater Judgment Is Unclear (*Grinnell* Factor 7).**

Even if Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). Here, the settlement eliminates the risk of collection. Accordingly, this factor also favors final approval.

### 7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

In Class Counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their claims and survived an appeal. Given the Supreme Court's recent decision in *Christopher*, the challenge of proving overtime hours in the absence of time records, and the uncertainty over whether the fluctuating workweek method of calculating damages applies in misclassification cases,[5] the $4,450,000 settlement amount represents a very good value, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial, defeated Defendants' exemption defenses, and survived an appeal.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead,

---

[5]      Under the fluctuating workweek method, Plaintiffs' overtime damages would consist of the unpaid half-time, instead of the full time-and-half, reducing their damages by two-thirds. *See* 29 C.F.R. § 778.114(a)

'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of La. v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

### III. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Sewell*, 2012 WL 1320124, at *10. Accordingly, the higher standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

1350, 1353 n.8 (11th Cir. 1982); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL

5507912, at *6 (S.D.N.Y. Nov. 29, 2012); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440,

2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial

nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.

*Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable

compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*,

2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was

the result of litigation and arm's-length negotiation involving vigorous back and forth. Bien

Decl. ¶¶ 11, 13. During the litigation and at the mediation, Plaintiffs and Defendants were

represented by counsel experienced in wage and

hour law. Because the Settlement Agreement resolves a clear and actual dispute waged in

contested litigation and resolved through arm's-length settlement negotiations, it should be

approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) finally

certify the settlement class; (2) grant final approval of the Settlement Agreement; (3) approve the

FLSA settlement; and (4) enter the proposed Order.


Dated: July 23, 2012
New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Rachel Bien
Rachel Bien

Adam T. Klein
Rachel Bien

21

Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**MORGAN & MORGAN, P.A.**
Carlos V. Leach*
Andrew R. Frisch
6824 Griffin Road
Davie, Florida 33314
Telephone:  (954) 318-0268
Facsimile:  (954) 333-3515
*Admitted pro hac vice

*Attorneys for Plaintiffs and the Class*